Filed 10/9/25  Lee v. JPMorgan Chase Bank CA2/7

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| DANIEL KWAN HAENG LEE, Plaintiff and Appellant, v. JPMORGAN CHASE BANK, N.A. et al., Defendants and Respondents. | B343128 (Los Angeles County Super. Ct. No. 23LBCV01651) |

APPEAL from a judgment of the Superior Court of Los Angeles County, Mark C. Kim, Judge.  Affirmed.

Daniel Kwan Haeng Lee, in pro. per., for Plaintiff and Appellant.

Kutak Rock, Steven M. Dailey and Jennifer L. Andrews for Defendants and Respondents.

## INTRODUCTION

Daniel Lee appeals from the judgment dismissing his first amended complaint after the trial court sustained a demurrer without leave to amend. Lee claims a deed of trust signed by his wife is void and subject to cancellation because Lee, as part owner of the community property used to secure his wife's loan, did not execute the deed of trust or agree to its terms. Lee also claims an assignment of that deed of trust is void and subject to cancellation because the original trustee did not execute the assignment.

The trial court sustained the demurrer on multiple grounds, including that Lee lacked standing, that he failed to allege void instruments, and that the statute of limitations barred his causes of action. In doing so, the court took judicial notice of the legal effects of two recorded grant deeds signed by Lee that made his wife the sole owner of the secured property. Because the trial court did not err in taking judicial notice of the legal effects of the recorded documents or in denying Lee's request for leave to amend the complaint, we affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

### A. *Lee Deeds His Property Interest to His Wife, Who Obtains a Loan Secured by the Property*

In February 2004 a grant deed transferred ownership of property in Long Beach to Lee and his wife Yuri Lee as joint tenants. On July 28, 2006 Lee and Yuri signed two grant deeds affecting the ownership interests in the property. The first conveyed the property from Lee and Yuri as joint tenants to Lee and Yuri as community property. The second conveyed the

2

property from Lee and Yuri as community property to Lee and Yuri as trustees of the Daniel Kwan Haeng Lee and Yuri Imuta Lee Revocable Trust dated July 28, 2006. Those grant deeds were not immediately recorded.

On August 18, 2006, before the July 28, 2006 grant deeds were recorded, Lee and Yuri signed four documents affecting their ownership of the property. First, and notwithstanding the July 28, 2006 grant deeds, Lee and Yuri signed a grant deed conveying the property from them as joint tenants to "Yuri I. Lee, A Married Woman as her sole and separate property." Second, Lee signed an interspousal grant deed conveying to Yuri as her "sole and separate property" Lee's "co-owner's interest" in the property. Third, Yuri signed a deed of trust identifying the "'Borrower'" as Yuri, "a married woman as her sole and separate property," the "'Lender'" and beneficiary as Washington Mutual Bank, FA, and the "'Trustee'" as California Reconveyance Company. The deed of trust stated that the borrower owed the lender $536,250 plus interest and that the debt was secured by the property in Long Beach. The deed of trust also included covenants allowing the borrower to grant and convey the property. Fourth, Yuri signed a grant deed conveying the property from Yuri back to Lee and herself as trustees of the family trust dated July 28, 2006.

The first three documents signed on August 18, 2006—the two grant deeds transferring Lee's ownership interest to Yuri and the deed of trust—were recorded on August 28, 2006. The grant deeds signed on July 28, 2006 conveying the property to Lee and Yuri as community property and then to the family trust were recorded on September 5, 2006. The fourth document signed on August 18, 2006—the grant deed conveying Yuri's ownership in

3

the property to Yuri and Lee as trustees of the family trust—was recorded on September 11, 2006.

### B. *Yuri Defaults on the Loan Twice and Loses Two Lawsuits Involving the Property; The Bank Forecloses*

In September 2008 the federal government's Office of Thrift Supervision appointed the Federal Deposit Insurance Corporation (FDIC) the receiver of Washington Mutual. (See *Gillies v. JPMorgan Chase Bank, N.A.* (2017) 7 Cal.App.5th 907, 913; *Scott v. JPMorgan Chase Bank, N.A.* (2013) 214 Cal.App.4th 743, 746 (*Scott*).) The FDIC sold to JPMorgan Chase Bank, National Association all of Washington Mutual's assets (with certain exceptions), but not Washington Mutual's liabilities for claims by borrowers. (*Scott*, at p. 746.) In November 2010 Chase, as the successor in interest to Washington Mutual, assigned its interest in the deed of trust signed by Yuri to Bank of America, National Association. Also in November 2010 the California Reconveyance Company recorded a notice of default on the loan secured by the property.

In February 2011 Yuri filed a complaint in Los Angeles County Superior Court against Chase and California Reconveyance Company for declaratory and injunctive relief.[1] Yuri alleged Chase lacked authority to foreclose on the property, in part because the assignment of the deed of trust from Chase to Bank of America was not "proper." The court sustained the defendants' demurrer without leave to amend and entered judgment for the defendants. In October 2011 California Reconveyance Company rescinded the notice of default.

---

[1]   *Lee v. J.P. Morgan Chase, N.A.* (Super. Ct. L.A. County, 2011, No. NC055738).

4

In August 2013 California Reconveyance Company recorded another notice of default on the loan and notified Yuri the property was in foreclosure. Multiple notices of trustee's sale were recorded between February 2014 and June 2017. In December 2017 Yuri filed another complaint in Los Angeles Superior Court against the loan servicer and U.S. Bank, National Association,[2] which became the successor trustee to Bank of America.[3] Yuri sought injunctive relief and damages and challenged U.S. Bank's authority to enforce the deed of trust. The defendants removed the action to federal district court, which transferred the action to the United States Bankruptcy Court for the Central District of California. That court granted a motion to dismiss the complaint with prejudice, and the district court and United States Court of Appeals for the Ninth Circuit affirmed.[4]

A new loan servicing company recorded notices of trustee's sale in 2018 and 2019, and the property sold at a trustee's sale on January 30, 2020. The property reverted to U.S. Bank as the beneficiary of the deed of trust.

---

[2]    *Lee v. Select Portfolio Servicing, Inc.* (Super. Ct. L.A. County, 2017, No. NC061515).

[3]    The complete name of the successor entity is U.S. Bank NA, Successor Trustee to Bank of America, NA, Successor in Interest to Lasalle Bank NA, as Trustee, on Behalf of the Holders of the WaMu Mortgage Pass-through Certificates, Series 2006-AR12. We refer to that entity as U.S. Bank.

[4]    *Lee v. Select Portfolio Servicing, Inc.* (Bankr. C.D.Cal. 2017, No. 2:18-ap-01130-VZ), affirmed (9th Cir. 2019) No. 19-55020).

C.  *Lee Files This Action; U.S. Bank Demurs; Lee Moves*
     *To File a Proposed Second Amended Complaint*

Lee filed this action on September 6, 2023.  His initial complaint alleged causes of action against Chase, "as Successor-in-interest for WaMu Mortgage Pass-through Certificates Series 2008-AR12," for quiet title, slander of title, cancellation and expungement of void instruments, and declaratory relief.  As successor in interest to Chase, U.S. Bank appeared and demurred to the complaint on the grounds that Lee failed to name a necessary party and, supported by a request for judicial notice, that Lee failed to allege facts sufficient to constitute any of his causes of action.  The caption page of the demurrer stated Lee "erroneously named" Chase as a defendant, and the demurrer and a concurrently filed motion to strike referred to U.S. Bank as the only defendant.

In response to the demurrer Lee filed a first amended complaint against Chase and U.S. Bank, alleging causes of action for "cancellation and expungement of void instruments" and for declaratory relief.[5]  Lee alleged that he purchased the property

---

[5]  The caption identified the defendants as "JPMorgan Chase Bank, National Association" and "U.S. Bank NA."  In its motion to strike U.S. Bank stated it was appearing in this action as the successor in interest to Chase and argued Lee did not have leave to amend the caption of his complaint by adding and renaming a defendant.  In future pleadings counsel for U.S. Bank identified itself as counsel for "JPMorgan Chase Bank and U.S. Bank NA, Successor Trustee to Bank of America, NA, Successor in Interest to Lasalle Bank NA, as Trustee, on Behalf of the Holders of the WaMu Mortgage Pass-through Certificates, Series 2006-AR12 [erroneously named as 'U.S. Bank NA']."  In an effort to avoid additional confusion, we refer to Chase and U.S. Bank as the

6

"using a community property fund he share[d] with his wife in January of 2004" and that he was "the Owner and Occupier" of that "'Community Property,'" as evidenced by the grant deeds executed on July 28, 2006.  As such, Lee alleged, "he was and still is the Owner of the said 'Community Property' since January of 2004, and is the real party in interest in [his] Action."

Lee alleged the deed of trust was void because, "as an owner of the 'Community Property,'" he did not sign or approve it.  Lee also alleged the deed of trust contained unidentified "False information" and resulted from "negligence" because Lee did not sign or accept its terms.  Lee alleged the November 2010 assignment was void because the deed of trust was created for the benefit of Washington Mutual, as the sole beneficiary, and Washington Mutual did not assign the deed of trust to U.S. Bank.  Lee also sought a declaration the deed of trust and the assignment were void and a judgment cancelling those documents.  Lee attached to his first amended complaint the July 28, 2006 grant deeds, the deed of trust, and the assignment.

Chase and U.S. Bank demurred and filed a request for judicial notice that included the grant deed and interspousal deed recorded August 28, 2006, recorded notices of default, recorded notices of trustee's sale, Yuri's complaints filed in 2011 and 2017 and related docket sheets, and the recorded trustee's deed upon sale following foreclosure on the property.  Among other things, Chase and U.S. Bank argued (1) Lee failed to join Yuri, who, as the borrower, was an indispensable party to the action; (2) Lee was not the real party in interest and lacked standing to sue because he was not the borrower and had no rights under the

defendants in the first amended and proposed second amended complaints.

7

deed of trust; (3) Lee's causes of action were barred by res judicata; (4) Lee's causes of action were time-barred; and (5) Lee failed to allege facts showing the deed of trust or the assignment were void. Chase and U.S. Bank asked the trial court to sustain the demurrer without leave to amend.

Lee opposed the demurrer but not the request for judicial notice. Among other things, Lee argued (1) he was the "sole damaged party" by the defendants' "concerted or collective effort to conceal information" or misrepresent facts; (2) as the grantee of a grant deed for the property and the trustee of the family trust that owned the property, he was the real party in interest; (3) res judicata did not apply because he was not a party to the loan agreement or to Yuri's lawsuits; (4) his claims were not time-barred because the statute of limitations does not begin to run on a quiet title cause of action (a cause of action Lee did not allege in the first amended complaint) while the plaintiff is in possession of the property in dispute, and statutes of limitation do not bar actions involving void instruments; and (5) he sufficiently alleged the deed of trust and assignment were void because the July 28, 2006 grant deed showed he was an owner of community property conveyed to a family trust, the deed of trust did not bear his signature, and the assignment was based on the void deed of trust.

Lee also filed a motion for leave to file a second amended complaint to identify U.S. Bank, National Association and U.S. Bank NA (as successor trustee) as defendants and to add causes of action for fraud and wrongful foreclosure.[6] Lee argued

---

[6] The proposed second amended complaint also included causes of action for quiet title and slander of title, as did the original complaint. But Lee's pleadings concerning the motion

8

the new causes of action were based on documents that the defendants submitted with their request for judicial notice and that he had not previously known about. Lee based his proposed new causes of action on his alleged ownership interest in the property at the time Yuri signed the deed of trust. Lee did not propose to add Yuri as a party to the action, and he requested a hearing on his motion for leave to amend the complaint on October 1, 2024, which was after the hearing on the demurrer scheduled for July 11, 2024.

On July 10, 2024, one day before the scheduled hearing on the demurrer, Lee filed a request for disability accommodation.[7] Lee asked the court to consider a "pre-written statement" and to enable the "text/chat feature" during the scheduled virtual hearing to allow Lee to supplement his responses in writing because a neurological disease made it difficult for him to speak and hear. The court granted Lee's request for all virtual appearances and stated: "As a technical matter, the court can allow remote participants to chat in LA Court Connect—the clerk will select the party in the interface and can 'enable chat.' The text will appear on the screen for participants to read."

for leave to file the second amended complaint did not mention or address those causes of action, and Lee does not argue on appeal the trial court erred in denying him leave to add them.

[7] California Rules of Court, rule 1.100(c)(3) provides: "Requests for accommodations must be made as far in advance as possible, and in any event must be made no fewer than 5 court days before the requested implementation date. The court may, in its discretion, waive this requirement."

9

D. *The Trial Court Sustains the Demurrer, Denies Lee Leave To Amend, and Dismisses the Case*

On July 11, 2024 the court issued a tentative ruling in the defendants' favor and held a hearing on the demurrer. During the hearing the chat feature did not work, and Lee requested an opportunity to file objections to the tentative ruling, which the court granted. The court continued the hearing to August 8, 2024 and ordered Lee to file any response or opposition to the tentative ruling by July 24, 2024. The court stated that it would make a ruling based on written arguments and that it would not allow further oral argument.

Lee filed an objection to the tentative ruling and included the "pre-written statement" he intended to submit at the hearing using the chat feature. Lee objected to the trial court's tentative ruling granting the request for judicial notice, arguing that "the alleged 'facts' are disputable" and that the documents contained "erroneous and/or hearsay statements," though Lee did not identify which facts in which documents he disputed. He argued that the county recorder's office records documents "without validating their authenticity or truthfulness" and that none of the documents recorded evidenced official acts subject to judicial notice.

Lee also objected to the merits of the tentative ruling and argued, among other things, (1) the deed of trust showed that, "on the day of encumbrance of an alleged note" (which was August 14, 2006), he "owned the subject property" but did not consent to the deed of trust; (2) the assignment of the deed of trust was void because it was signed by Chase instead of Washington Mutual, and Chase "did not acquire mortgages from FDIC by operation of law"; (3) the trial court was determining the

10

legal effect of the judicially recognized documents based on the dates they were recorded, rather than the dates they were signed; (4) he had standing to sue as the trustee of the trust that owned the property or as an owner of the property; (5) his claims were not barred by res judicata because he was not a party to Yuri's lawsuits and the notice of default prompting one of the lawsuits was later rescinded; (6) his claims were not time-barred because there is no statute of limitations for quiet title actions (which again was not a cause of action he alleged) and because void documents can be challenged at any time; and (7) he was entitled to leave to amend because of newly discovered information and evidence.

The trial court granted the request for judicial notice, sustained the demurrer, and denied Lee leave to amend the complaint. In granting the request for judicial notice the trial court stated "the judicially noticeable documents show that [Lee's] wife was the sole owner of the property on the date the deed of trust was recorded, and therefore Defendants' predecessors were under no obligation to include [Lee] on the loan or resultant deed of trust." In sustaining the demurrer the trial court ruled (1) Lee had not pleaded a void deed of trust; (2) Yuri was a necessary party; (3) Lee lacked standing to challenge the deed of trust and the assignment; (4) Lee's causes of action were barred by res judicata; and (5) Lee's causes of action were time-barred. The court denied Lee leave to amend the complaint as futile because the "case presents purely legal issues for determination."

Lee filed a motion for reconsideration based on his alleged discovery of new facts and law, which the court heard with Lee's motion for leave to file the second amended complaint. Chase

11

and U.S. Bank opposed both motions.  Regarding the motion for leave to file the proposed second amended complaint, they argued that the court had already denied Lee leave to amend in connection with the demurrer, that the proposed causes of action for fraud and wrongful foreclosure were based on the same allegations underlying the causes of action in the first amended complaint, and that the proposed amendments would not cure the defects in that complaint.

The court denied both motions.  Regarding the motion for leave to amend the complaint, the court ruled Lee failed to show how the proposed causes of action for fraud and wrongful disclosure would cure "the defects detailed in the Court's ruling sustaining the demurrer" or his lack of standing.  The court entered judgment dismissing Lee's action with prejudice, and Lee timely appealed.

## DISCUSSION

"The law governing our review of a ruling on a demurrer is well-established.  '[W]e examine the complaint de novo to determine whether it alleges facts sufficient to state a cause of action under any legal theory.'" (*Bath v. State of California* (2024) 105 Cal.App.5th 1184, 1193; see *Capito v. San Jose Healthcare System, LP* (2024) 17 Cal.5th 273, 280-281.)  "'[W]e accept the truth of material facts properly pleaded in the operative complaint, but not contentions, deductions, or conclusions of fact or law.  We may also consider matters subject to judicial notice.'" (*Capito*, at p. 280; accord, *Yvanova v. New Century Mortgage Corp.* (2016) 62 Cal.4th 919, 924; see *Scott, supra*, 214 Cal.App.4th at p. 751 ["a demurrer may be sustained where judicially noticeable facts render the pleading

12

defective [citation], and allegations in the pleading may be disregarded if they are contrary to facts judicially noticed"].)

"[T]o prevail on appeal from an order sustaining a demurrer, the appellant must affirmatively demonstrate error. Specifically, the appellant must show that the facts pleaded are sufficient to . . . overcome all legal grounds on which the trial court sustained the demurrer." (*Scott*, *supra*, 214 Cal.App.4th at p. 752; accord, *Sonoma Luxury Resort LLC v. California Regional Water Quality Control Bd.* (2023) 96 Cal.App.5th 935, 940-941.) "'A judgment of dismissal after a demurrer has been sustained without leave to amend will be affirmed if proper on any grounds stated in the demurrer, whether or not the court acted on that ground.'" (*Bath v. State of California*, *supra*, 105 Cal.App.5th at p. 1193.)

### A.     *The Trial Court Did Not Err in Taking Judicial Notice of the Legal Effects of the Recorded Documents*

#### 1.     *Applicable Law and Standard of Review*

""'Judicial notice is the recognition and acceptance by the court, for use by the trier of fact or by the court, of the existence of a matter of law or fact that is relevant to an issue in the action without requiring formal proof of the matter.'"" (*Poseidon Development, Inc. v. Woodland Lane Estates, LLC* (2007) 152 Cal.App.4th 1106, 1117; accord, *Fontenot v. Wells Fargo Bank, N.A.* (2011) 198 Cal.App.4th 256, 264, disapproved on another ground in *Yvanova v. New Century Mortgage Corp.*, *supra*, 62 Cal.4th at p. 939, fn. 13.) "'In determining the sufficiency of a complaint against demurrer . . . [a] court may take judicial notice of something that cannot reasonably be

13

controverted, even if it negates an express allegation of the pleading." (*Poseidon*, at p. 1117; see *Alfaro v. Community Housing Improvement System & Planning Assn., Inc.* (2009) 171 Cal.App.4th 1356, 1382.)

In general, a court takes judicial notice of facts, not documents. (See *Mendoza v. Superior Court* (2024) 103 Cal.App.5th 865, 871 ["'judicial notice, by definition, applies solely to undisputed facts'"].) In taking judicial notice of a document reflecting the official acts of a local agency,[8] however, "a court may take notice not only of the fact of the document but also facts that can be deduced, and/or clearly derived from, its legal effect, such as the names and dates contained in the document, and the legal consequences of the document." (*Julian Volunteer Fire Co. Assn. v. Julian-Cuyamaca Fire Protection Dist.* (2021) 62 Cal.App.5th 583, 599-600.) For example, for documents recorded by a county recorder's office, the court may take judicial notice of "'the fact of a document's recordation, the date the document was recorded and executed, the parties to the transaction reflected in a recorded document, and the document's legally operative language, assuming there is no genuine dispute regarding the document's authenticity. From this, the court may deduce and rely upon the legal effect of the recorded document, when that effect is clear from its face.'" (*Linda Vista Village San Diego Homeowners Assn., Inc. v. Tecolote Investors, LLC* (2015) 234 Cal.App.4th 166, 184; see *Scott*, *supra*,

---

[8] Evidence Code section 452, subdivision (c), "enables courts in California to take notice of a wide variety of official acts,'" and courts must give the provision "'an expansive reading'" to include executive acts performed by administrative agencies. (*Scott*, *supra*, 214 Cal.App.4th at pp. 752-753.)

14

214 Cal.App.4th at p. 755; see also *Yvanova v. New Century Mortgage Corp.*, *supra*, 62 Cal.4th at p. 924, fn. 1 [court may take judicial notice of a recorded deed]; *Poseidon Development, Inc. v. Woodland Lane Estates, LLC*, *supra*, 152 Cal.App.4th at p. 1117 [same].) We review the trial court's ruling on the request for judicial notice for abuse of discretion. (*Vo v. Technology Credit Union* (2025) 108 Cal.App.5th 632, 639.)

 2. *Lee's Arguments Are Forfeited and Meritless*

Lee's challenge to the trial court's ruling on the defendants' request for judicial notice focuses primarily on the legal effects of the grant deeds and the deed of trust signed August 18, 2006 (and recorded August 28, 2006), which made Yuri the sole owner of the property and secured the property as collateral for her loan. Those legal effects, however, are within the scope of matters the court may judicially notice. (See *Scott*, *supra*, 214 Cal.App.4th at p. 755 [taking judicial notice of the legal effect of recorded documents that transferred the assets of Washington Mutual to Chase]; *Fontenot v. Wells Fargo Bank, N.A.*, *supra*, 198 Cal.App.4th at p. 266 [taking judicial notice of the beneficiary under a deed of trust "because, as a legally operative document, the deed of trust designated [that party] as the beneficiary"]; *Poseidon Development, Inc. v. Woodland Lane Estates, LLC*, *supra*, 152 Cal.App.4th at p. 1118 [taking judicial notice of the legal effect of a recorded assignment, through which the plaintiff "gave up and no longer held the beneficial interest under the deed of trust"]; see also *McElroy v. Chase Manhattan Mortgage Corp.* (2005) 134 Cal.App.4th 388, 394 [taking judicial notice of the recording of a notice of default under a deed of trust, the date of the notice's recording, and the amount stated in the notice as

15

owing].) Thus, the trial court did not abuse its discretion in taking judicial notice that, as a result of those documents, Yuri was "the sole owner of the property on the date the deed of trust was recorded."

In his opening brief Lee argues the trial court erred in taking judicial notice of the recorded documents because they were not authenticated under Evidence Code sections 1400 and 1401 and neither U.S. Bank nor Chase provided a "sworn declaration" regarding the "chain of title." Lee did not make either argument in the trial court, thus forfeiting both. (See *Dougherty v. U.S. Behavioral Health Plan* (2024) 101 Cal.App.5th 682, 688; *Bitner v. Department of Corrections & Rehabilitation* (2023) 87 Cal.App.5th 1048, 1065.)

Forfeiture aside, Lee's arguments are meritless. To request judicial notice of a fact, a party need not "authenticate" the fact as a "writing" under Evidence Code section 1400 or 1401.[9] Indeed, the trial court did not take judicial notice of the documents submitted by Chase and U.S. Bank; it took judicial notice of facts evinced by those documents. (See *Mendoza v. Superior Court*, *supra*, 103 Cal.App.5th at p. 871.) Moreover, Lee does not challenge the authenticity of the recorded documents,

---

[9] Evidence Code section 1400 provides: "Authentication of a writing means (a) the introduction of evidence sufficient to sustain a finding that it is the writing that the proponent of the evidence claims it is or (b) the establishment of such facts by any other means provided by law." Evidence Code section 1401 provides: "(a) Authentication of a writing is required before it may be received in evidence. [¶] (b) Authentication of a writing is required before secondary evidence of its content may be received in evidence."

16

including the grant deeds he signed on August 18, 2006. He contends only that they are "conflicting" and that he "did not understand the legal implications of these documents at the time" he signed them. Lee states he later realized the grant deeds were "illogical, inconsistent, and possibly deceptive," but he does not contend they are not authentic. (See *Scott*, *supra*, 214 Cal.App.4th at pp. 753, 755 [court could take judicial notice of facts evinced by recorded documents where the complaint did not question "the authenticity, completeness, or legal effect" of the documents].) Finally, Lee does not explain what he means by the "chain of title" in connection with the documents listed in the request for judicial notice or how any such "chain of title" (or its absence) impacts the facts evinced by the documents.[10]

In his reply brief Lee makes numerous arguments regarding the request for judicial notice he did not make in the trial court or in his opening brief, including that (1) the trial court should have held a hearing on the request for judicial notice under Evidence Code section 402; (2) the deed of trust was "concealed"; (3) Chase "lacked authority" to make the assignment; (4) the first notice of default was rescinded; (5) the second notice of default did not include a "perjury attestation"; and (6) there was no "2020 Power of Attorney" for the trustee's deed upon sale. Lee forfeited these arguments by failing to make them in the trial court or in his opening brief (see *Wawrzenski v. United Airlines*,

---

[10]    Lee argues for the first time on appeal that U.S. Bank's request for judicial notice "[o]mitted any representation of [Chase]." Even if Lee had not forfeited this argument, that Chase was not listed as a represented party in the request for judicial notice did not diminish the trial court's authority to grant the request.

*Inc.* (2024) 106 Cal.App.5th 663, 686, fn. 9 [appellant forfeited her argument by not making it in the trial court or in her opening brief]) and by citing legal authorities without providing any legal or factual discussion of how those authorities demonstrate the trial court erred (see *E.I. v. El Segundo Unified School Dist.* (2025) 111 Cal.App.5th 1267, 1289 [conclusory arguments failed to meet the appellant's burden to affirmatively show prejudicial error]). To the extent we understand Lee's arguments, none of them demonstrates the trial court erred in granting the request for judicial notice.

> B. *Lee Lacks Standing To Assert His Causes of Action for Cancellation and Declaratory Relief*

"'Standing' derives from the principle that '[e]very action must be prosecuted in the name of the real party in interest . . . .'" (*City of Santa Monica v. Stewart* (2005) 126 Cal.App.4th 43, 59; accord, *Cohen v. TNP 2008 Participating Notes Program, LLC* (2019) 31 Cal.App.5th 840, 855.) "In general, California law does not give a party personal standing to assert rights or interests belonging solely to others." (*Yvanova v. New Century Mortgage Corp.*, *supra*, 62 Cal.4th at p. 936; accord, *Limon v. Circle K Stores Inc.* (2022) 84 Cal.App.5th 671, 691.) Under Code of Civil Procedure section 367, "[e]very action must be prosecuted in the name of the real party in interest, except as otherwise provided by statute." Indeed, the Legislature has the power to grant a person the right to sue for the benefit of others, and "'[i]n such a case it might justly be said that it has granted him [or her] "standing."'" (*Limon*, at p. 691.) Lee's causes of action, however, do not arise under a statute that confers standing on him. Thus, he must be a real party in interest to have standing. (See *City of*

18

*Brentwood v. Campbell* (2015) 237 Cal.App.4th 488, 504 ["anyone other than a real party in interest lacks standing and is subject to a demurrer for the failure to state a cause of action"].)

A real party in interest is "a 'person who possesses the right to sue under the substantive law involved.'" (*Doe v. Regents of University of California* (2022) 80 Cal.App.5th 282, 297; see *City of Brentwood v. Campbell*, *supra*, 237 Cal.App.4th at p. 504.) Thus, a real party in interest must be able to "show[ ] an invasion of his or her legally protected interests." (*Yvanova v. New Century Mortgage Corp.*, *supra*, 62 Cal.4th at p. 937.) For example, a "foreclosed-upon borrower" has standing to challenge the validity of an assignment to which he or she was not a party because "the borrower has lost ownership to the home." (*Ibid.*)

Lee is not a real party in interest and lacks standing to sue for cancellation of the deed of trust and the assignment because he was not the borrower on the promissory note secured by the deed of trust. Lee alleged he had standing as owner of the property as community property, as evidenced by the grant deeds executed on July 28, 2006. Lee is wrong for at least two reasons.

First, as between Lee and Yuri, Civil Code section 1217 provides: "An unrecorded instrument is valid as between the parties thereto and those who have notice thereof." Thus, after Lee and Yuri signed the grant deeds dated July 28, 2006 that first conveyed the property from themselves as joint tenants to themselves as community property, and then conveyed the property from themselves as community property to themselves as trustees of the family trust, Lee's interest in the property was as a trustee of the family trust. (See *Newell v. Superior Court* (2024) 107 Cal.App.5th 728, 736 ["The trustee of a trust holds title to real property."]; *Portico Management Group, LLC v.*

*Harrison* (2011) 202 Cal.App.4th 464, 473 [same].) Contrary to Lee's allegation, he did not own the property "as a 'Community Property' owner" before he and Yuri signed the four documents on August 18, 2006. Lee and Yuri as trustees never transferred the property to Lee (or Yuri, for that matter), as separate or community property. He lacks standing to maintain this action.

Second, as between Lee and the bank, Lee gave Yuri authority to encumber the property, and she was the sole borrower on the promissory note secured by the deed of trust. The grant deed recorded February 25, 2004 showing Lee and Yuri owned the property as joint tenants was the only deed recorded before Yuri signed the deed of trust. Based on that recording, Washington Mutual had constructive notice the only owners of the property were Lee and Yuri as joint tenants. (See *Lauckhart v. El Macero Homeowners Assn.* (2023) 92 Cal.App.5th 889, 901 ["a recorded written instrument that affects title to real property provides constructive notice of its contents"].) On August 18, 2006, Lee and Yuri executed the grant deed conveying the property from themselves as joint tenants to Yuri as "A Married Woman as her sole and separate property," and for good measure, Lee signed the interspousal grant deed granting Lee's interest in the property to Yuri as "a married woman as her sole and separate property."[11] Those grant deeds may not have been valid as between Lee and Yuri because (as discussed) they previously transferred ownership of the property to themselves as trustees of the family trust (see Civ. Code, § 1217), but there is no

---

[11] Family Code sections 850 and 852, subdivision (a), allow spouses to transmute real community property to separate property of either spouse in a writing consented to by the spouse whose interest in the property is adversely affected.

evidence, and Lee does not allege, Washington Mutual had notice of that transfer. Thus, as far as Washington Mutual was concerned, Lee and Yuri had transferred their ownership interests as joint tenants to Yuri as her "sole and separate property," which is what the deed of trust reflects in its definition of "borrower." Washington Mutual was a bona fide encumbrancer of the property, with Yuri as the sole owner. (See *Vasquez v. LBS Financial Credit Union* (2020) 52 Cal.App.5th 97, 107 ["'a bona fide purchaser for value who acquires his or her interest in real property without knowledge or notice of another's prior rights or interest in the property takes the property free of such unknown interests'"]; *Melendrez v. D & I Investment, Inc.* (2005) 127 Cal.App.4th 1238, 1251 [same elements apply to determine whether a party who takes or purchases a lien is a bona fide encumbrancer].)

Contrary to Lee's allegations, the recorded deeds (the trial court properly took judicial notice of) show Yuri was the sole owner of the property on the day she signed the deed of trust and had authority to encumber the property without Lee's consent. (See *Alfaro v. Community Housing Improvement System & Planning Assn., Inc.*, *supra*, 171 Cal.App.4th at p. 1381 ["'court may take judicial notice of something that cannot reasonably be controverted [such as a recorded deed], even if it negates an express allegation of the pleading'"]; *Poseidon Development, Inc. v. Woodland Lane Estates, LLC*, *supra*, 152 Cal.App.4th at p. 1117 [same]; see also *Evans v. City of Berkeley* (2006) 38 Cal.4th 1, 20 ["a demurrer assumes the truth of the complaint's properly pleaded allegations, but not of . . . assertions contradicted by judicially noticeable facts"].) As a result, Lee did not have a legally protected interest in the deed of trust or the

21

subsequent assignment and did not have standing to seek their cancellation or related declaratory relief. (See *Hacker v. Homeward Residential, Inc.* (2018) 26 Cal.App.5th 270, 278-279 [plaintiff failed "to plead an ownership interest in the property sufficient to confer standing" to maintain a cause of action to cancel void instruments]; *Saterbak v. JPMorgan Chase Bank, N.A.* (2016) 245 Cal.App.4th 808, 813-814 [plaintiff who was not a party to an allegedly invalid assignment of a deed of trust lacked standing to seek to cancel the assignment because she had no "'beneficial interest that is concrete and actual"].)

Lee argues Family Code section 1102, subdivision (a), required him to execute any instrument encumbering the alleged community real property.[12] But as discussed, Lee did not own the property as community property when Yuri signed the deed of trust. Moreover, even assuming Yuri could not unilaterally encumber the property or revoke the trust without Lee's consent, Lee provided that consent by signing the August 18, 2006 grant and interspousal deeds, which purported to transfer Lee's interest in the property to Yuri, as her separate property. Thus, Lee consented to Yuri having sole authority to encumber the property. (See *In re Brace* (2020) 9 Cal.5th 903, 937-938 ["a 'married person may, without the consent of the person's spouse, convey the person's separate property'"]; see also Fam.

---

[12] Family Code section 1102, subdivision (a), provides: "Except as provided in Sections 761 and 1103, either spouse has the management and control of the community real property, . . . but both spouses, either personally or by a duly authorized agent, are required to join in executing an instrument by which that community real property or an interest therein is leased for a longer period than one year, or is sold, conveyed, or encumbered."

22

Code, § 761, subd. (b) ["[c]ommunity property . . . that is distributed or withdrawn from a trust by revocation, power of withdrawal, or otherwise, remains community property unless there is a valid transmutation of the property at the time of distribution or withdrawal"].)

Lee does not contend he did not sign the August 18, 2006 grant deeds (which were notarized by the same person who notarized the deed of trust). Instead, he argues he did not understand the legal implications of those documents and believed they were part of "trust-related paperwork." In general, "one who assents to a contract is bound by its provisions and cannot complain of unfamiliarity with the language of the instrument." (*Madden v. Kaiser Foundation Hospitals* (1976) 17 Cal.3d 699, 710; accord, *Estate of Eskra* (2022) 78 Cal.App.5th 209, 228, fn. 13; see *Casey v. Proctor* (1963) 59 Cal.2d 97, 104-105 [absent "disabling pressure," the plaintiff's failure to understand the scope of a contract is "attributable to his own neglect" and does not entitle him to rescission].) A deed may be void or voidable, however, where the grantor's signature is forged (*WFG National Title Ins. Co. v. Wells Fargo Bank, N.A.* (2020) 51 Cal.App.5th 881, 890) or the grantor is aware of what he or she is executing, but has been induced to do so through fraudulent misrepresentations (*La Jolla Group II v. Bruce* (2012) 211 Cal.App.4th 461, 477). Lee has not alleged any such facts or circumstances; indeed, the complaint never mentions either of the August 18, 2006 grant deeds. A deed also may be void or voidable where "'the grantor is unaware of the nature of what he or she is signing'" (*ibid.*; see *Schiavon v. Arnaudo Brothers* (2000) 84 Cal.App.4th 374, 378), but the leading case addressing such circumstances involved fraudulent inducement of an incompetent

grantor (see *Erickson v. Bohne* (1955) 130 Cal.App.2d 553, 554 [deed was void where the plaintiff's daughter took advantage of the plaintiff's physical and mental conditions that left her "wholly incapable of transacting business"]; see also *Walters v. Boosinger* (2016) 2 Cal.App.5th 421, 431-432 [discussing *Erickson*]; *Schiavon*, at pp. 378-379 [same]).  Lee cites no case where a bare allegation of ignorance was sufficient to allege a void or voidable instrument.

C.     *Lee Did Not Plead a Void or Voidable Deed of Trust*

Even if Lee had standing to maintain a cause of action for cancellation and a derivative cause of action for declaratory relief, Lee did not allege sufficient facts to constitute a cause of action for cancellation.  "To prevail on a claim to cancel an instrument, a plaintiff must allege and prove (1) the instrument is void or voidable; and (2) he or she has a reasonable apprehension of serious injury including pecuniary loss or the prejudicial alteration of their position." (*Lauckhart v. El Macero Homeowners Assn.*, *supra*, 92 Cal.App.5th at p. 900; see Civ. Code, § 3412;[13] *Thompson v. Ioane* (2017) 11 Cal.App.5th 1180, 1193-1194.)  Absent any interest in a property that is the subject of a recorded instrument, the plaintiff cannot allege a reasonable apprehension the instrument could cause him or her serious injury, and thus cannot maintain a claim to cancel it. (*Thompson*, at p. 1194; cf. *U.S. Bank National Assn. v. Naifeh*

_____

[13]     Civil Code section 3412 states:  "A written instrument, in respect to which there is a reasonable apprehension that if left outstanding it may cause serious injury to a person against whom it is void or voidable, may, upon his application, be so adjudged, and ordered to be delivered up or canceled."

24

(2016) 1 Cal.App.5th 767, 778-779 [plaintiff "would suffer pecuniary loss and a prejudicial change of position if the fraudulent documents were not cancelled, since [the plaintiff] held title to the [p]roperty"].) As discussed, Lee alleged the deed of trust was void because Yuri did not have authority to encumber the property without Lee's consent. But the judicially noticed facts demonstrated Lee's community property was not encumbered without his consent because he did not own the property as community property at the time it was encumbered and he transferred his interest to Yuri the same day she signed the deed of trust. Thus, Lee did not allege a cognizable interest in the property subject to the deed of trust, and he cannot plead a reasonable apprehension of a serious injury to him to state a cause of action for cancellation. And because Lee has no legal interest in the deed of trust, he similarly has no interest in the 2010 assignment of that deed of trust and cannot seek to cancel either instrument or a declaration the instruments are void.

D.    *The Causes of Action for Cancellation and Declaratory Relief Are Time-barred*

Even if Lee had standing and had alleged sufficient facts to constitute a cause of action for cancellation, any such cause of action (and derivative cause of action for declaratory relief) would be time-barred. The statute of limitations for Lee's proposed cause of action for cancellation is one year or four years. Either bars Lee's complaint.

A spouse must bring an action under Family Code section 1102, "to avoid an instrument" "affecting any property standing of record in the name of either spouse alone, executed by the spouse alone," within "one year from the filing for record of

25

that instrument in the recorder's office in the county in which the land is situated."  (Fam. Code, § 1102, subd. (d).)  Lee alleged that the deed of trust is void because he did not consent to its terms, as an owner of the community property encumbered by the deed of trust, and that the assignment of the deed of trust is void because Washington Mutual did not sign it.  But the deed of trust Yuri signed was recorded August 28, 2006, and the assignment of the deed of trust was recorded November 5, 2010.  Thus, under Family Code section 1102, subdivision (d), Lee had until August 28, 2007 and November 5, 2011, respectively, to bring an action for cancellation of the deed of trust or its assignment.  He did not file this action until September 6, 2023.  (See *Lee v. Hanley* (2015) 61 Cal.4th 1225, 1232 [statute of limitations may bar an action where the defect clearly and affirmatively appears on the face of the complaint]; *Raja Development Co., Inc. v. Napa Sanitary Dist.* (2022) 85 Cal.App.5th 85, 91 [same].)

If Lee brought his proposed cause of action for cancellation under another theory, the four-year "catchall" limitations period in Civil Code section 343 would apply (see *Salazar v. Thomas* (2015) 236 Cal.App.4th 467, 477 & fn. 8), and the statute of limitation would have expired on August 28, 2010 and November 5, 2014, respectively.  The same statute of limitation would apply to any derivative cause of action for declaratory relief.  (See *Bank of New York Mellon v. Citibank, N.A.* (2017) 8 Cal.App.5th 935, 943 ["A claim for declaratory relief is subject to the same statute of limitations as the legal or equitable claim on which it is based."].)  Thus, regardless of which statute of limitation applies, any cause of action for cancellation and declaratory relief is time-barred.

Lee argues his causes of action for cancellation and declaratory relief are not time-barred because the deed of trust and the assignment of the deed of trust are void, and "void instruments are not time-barred." Lee is wrong. "'[S]tatutes of limitations apply whether the document under challenge is asserted to be "void" or "voidable."'" (*Walters v. Boosinger, supra,* 2 Cal.App.5th at p. 433, italics omitted; see *Robertson v. Superior Court* (2001) 90 Cal.App.4th 1319, 1326, fn. 6.) Lee also argues "[e]quitable tolling" applies because he did not discover the "foreclosure" until 2024. Lee forfeited this argument by not making it in the trial court. (See *Wawrzenski v. United Airlines, Inc., supra,* 106 Cal.App.5th at p. 686, fn. 9.) In any event, Lee's assertion he did not discover the foreclosure until 2024 does not explain why he could not have discovered the recorded deed of trust and assignment until that time. Nor does it explain how Lee could have been surprised Yuri encumbered the property: He consented to her sole ownership of the property, at least for purposes of entering into the loan, by signing the grant deed and interspousal grant deed in 2006.

> E. *Lee Forfeited His Argument the Trial Court Erred in Failing To Accommodate His Disabilities, and Any Error Was Harmless*

Citing the Americans with Disabilities Act of 1990, title 42 of the United States Code section 12101 et seq., and California Rules of Court, rule 1.100, Lee argues the trial court violated his right to due process and his "disability rights" because the court "[i]gnored the chat record" at the hearing on July 11, 2024 (even though there is no "chat record" in the record on appeal); "[p]rohibited oral argument" (presumably at the

27

continued hearing on August 8, 2024); and ruled on the demurrer "without reading" Lee's "statement into the record." He also cites Code of Civil Procedure section 1005, subdivision (b) (establishing deadlines for filing moving and supporting papers), and an incorrectly cited case as supporting his "right to be heard." Lee does not make any substantive argument applying these or other authorities to the facts of this case. For example, Lee does not state whether he participated in any other way at the hearing on July 11, 2024, nor does he identify the substance of the "chat record" the court purportedly ignored. Lee nonetheless claims the trial court's errors require reversal. In his reply brief, Lee argues for the first time the court violated his rights to equal protection under the Fourteenth Amendment and his federal civil rights.

Lee forfeited his arguments several times. First, he did not object to the trial court's order continuing the hearing on the demurrer to August 8, 2024, requiring him to submit his opposition to the court's tentative ruling in writing and precluding additional oral argument. Indeed, the court's order states it was made "[p]ursuant to the request of plaintiff."[14] And the written objections to the tentative ruling Lee filed in response to the court's order did not object to the part of the order continuing the hearing without further oral argument, despite Lee acknowledging that "the chat feature was not working at the hearing" and that the trial court required him "to file a written

_____

[14] The record on appeal does not include a reporter's transcript. To the extent Lee intended to raise an issue requiring consideration of an oral proceeding in the trial court, he had to provide a record of that proceeding. (See Cal. Rules of Court, rule 8.120(b).)

28

objection to [the] tentative ruling"; nor did Lee claim the court ignored any chat record. Lee's failure to object in the trial court or to ask for a continuance to allow him to benefit from the disability accommodations the court granted him deprived the court of the opportunity to correct any error and forfeited Lee's arguments on appeal. (See *Glassman v. Safeco Ins. Co. of America* (2023) 90 Cal.App.5th 1281, 1326-1327 ["Appellate courts will not reverse for procedural defects or erroneous rulings that could have been but were not raised below."]; *Children's Hospital & Medical Center v. Bontá* (2002) 97 Cal.App.4th 740, 776 ["It is unfair to the trial judge and to the adverse party to take advantage of an alleged error on appeal where it could easily have been corrected [in the trial court]."].) Lee also forfeited his arguments by making them for the first time in his reply brief and failing to support them with relevant factual or legal discussion. (See *E.I. v. El Segundo Unified School Dist.*, *supra*, 111 Cal.App.5th at p. 1289; *Wawrzenski v. United Airlines, Inc.*, *supra*, 106 Cal.App.5th at p. 686.)

To the extent Lee has not forfeited his arguments, he has not shown any purported error prejudiced him. "Absent a due process violation or some other error that undermines the fundamental fairness of the proceeding involved," we consider whether the trial court's error, if any, caused Lee prejudice. (See *Friends of South Fork Gualala v. Department of Forestry & Fire Protection* (2024) 106 Cal.App.5th 1180, 1203 [trial court's error in denying disability accommodations under California Rules of Court, rule 1.100 was subject to "a prejudice analysis," where the plaintiff did not suffer any significant "procedural deprivations"]; see also *F.P. v. Monier* (2017) 3 Cal.5th 1099, 1108 ["'it will be the rare case' where an error—even 'a constitutional violation'—'will

29

not be subject to harmless error analysis'"].)  Lee planned to provide a written statement at the hearing on July 11, 2024, and he submitted that statement along with his objections to the tentative ruling before the court's order sustaining the demurrer. That order states the court "read and reviewed all submitted objections and replies," and Lee cites no authority requiring the court to read his statement orally into the record.  Lee also does not argue the trial court prevented him from "argu[ing] the matter in open court" (*Medix Ambulance Service, Inc. v. Superior Court* (2002) 97 Cal.App.4th 109, 115) at the July 11, 2024 hearing (see *id.* at pp. 114-115 [in ruling on a demurrer, the court must allow the parties an opportunity for oral argument]), and without a reporter's transcript (or settled statement) of that proceeding we cannot determine whether the result would have been different in the absence of any error (see *Nelson v. Anderson* (1999) 72 Cal.App.4th 111, 136 [appellant cannot demonstrate prejudicial error where it failed to provide a record sufficient to determine whether the result would have been different in the absence of error]).  Under these circumstances, and regardless of the standard of prejudice applied to constitutional error in civil cases, any error was harmless.  (See *Friends of South Fork Gualala v. Department of Forestry & Fire Protection*, *supra*, 106 Cal.App.5th at p. 1202 [purported error in denying disability accommodations was harmless where "[t]here was no denial of access to judicial services"]; Eisenberg et al., Cal. Practice Guide: Civil Appeals and Writs (The Rutter Group 2024) ¶ 8:319 [federal constitutional error is rare in civil appeals, but courts have applied the *Chapman* standard in cases involving involuntary civil commitments, certain conservatorship proceedings, and dependency proceedings]; see also *Mathew Zaheri Corp. v.*

30

*New Motor Vehicle Bd.* (1997) 55 Cal.App.4th 1305, 1320, fn. 15 [identifying but not addressing "the interesting question of the standard of harmless error for a constitutional due process violation in a civil case"].)[15]

F. *Lee Has Not Met His Burden To Show His Proposed Amendments Would Cure the Defects*

"'It is an abuse of discretion for the trial court to sustain a demurrer without leave to amend if the plaintiff demonstrates a reasonable possibility that the defect can be cured by amendment.' [Citation.] Moreover, 'a reviewing court is compelled to find an abuse of discretion in denying leave where the plaintiff presents a tenable basis of amendment on appeal even though the theory was not presented to the trial court.'" (*River's Side at Washington Square Homeowners Assn. v. Superior Court* (2023) 88 Cal.App.5th 1209, 1239; see *King v. CompPartners, Inc.* (2018) 5 Cal.5th 1039, 1050 ["we consider whether there is a 'reasonable possibility' that the defect in the complaint could be cured by amendment"].) "The burden is on the plaintiff[ ] to prove that amendment could cure the defect." (*King*, at p. 1050; see *Hacker v. Homeward Residential, Inc.*, *supra*, 26 Cal.App.5th at p. 276.)

"To satisfy that burden, the plaintiff "'must show in what manner he can amend his complaint and how that amendment

---

[15] Lee also failed to show any prejudice resulting from the trial court clerk's refusals to grant his requests for entry of default against Chase. Chase assigned its interest in the deed of trust to U.S. Bank's predecessor in interest and no longer had any interest in the deed of trust or the secured property. Thus, any error in the trial court clerk's refusal to enter default against Chase did not prejudice Lee.

will change the legal effect of his pleading." [Citation.] The assertion of an abstract right to amend does not satisfy this burden. [Citation.] The plaintiff must clearly and specifically set forth the "applicable substantive law" [citation] and the legal basis for amendment, i.e., the elements of the cause of action and authority for it. Further, the plaintiff must set forth factual allegations that sufficiently state all required elements of that cause of action. [Citations.] . . . [¶] The burden of showing that a reasonable possibility exists that amendment can cure the defects remains with the plaintiff; neither the trial court nor this court will rewrite a complaint. [Citation.] Where the appellant offers no allegations to support the possibility of amendment and no legal authority showing the viability of new causes of action, there is no basis for finding the trial court abused its discretion when it sustained the demurrer without leave to amend.'" (*Rosen v. St. Joseph Hospital of Orange County* (2011) 193 Cal.App.4th 453, 458; accord, *Struiksma v. Ocwen Loan Servicing, LLC* (2021) 66 Cal.App.5th 546, 559; *Larson v. UHS of Rancho Springs, Inc.* (2014) 230 Cal.App.4th 336, 343; *Rossberg v. Bank of America, N.A.* (2013) 219 Cal.App.4th 1481, 1491; *Rakestraw v. California Physicians' Service* (2000) 81 Cal.App.4th 39, 43-44; see *Hacker v. Homeward Residential, Inc.*, *supra*, 26 Cal.App.5th at pp. 276-277 ["a plaintiff 'must show in what manner he can amend his complaint and how that amendment will change the legal effect of his pleading'"].) The plaintiff may meet this burden for the first time on appeal. (*Starlight Cinemas, Inc. v. Massachusetts Bay Ins. Co.* (2023) 91 Cal.App.5th 24, 32; see *A.J. Fistes Corp. v. GDL Best Contractors, Inc.* (2019) 38 Cal.App.5th 677, 687.)

As discussed, Lee requested leave to amend his complaint to add causes of action for fraud and wrongful foreclosure and to

add Bank of America, National Association as a defendant. Lee argues the trial court's order denying him leave to amend did not address whether his proposed amendments "could resolve disputes" and "prejudiced" his "ability to pursue meritorious claims." Lee does not explain how his proposed amendments make his claims "meritorious" or cite any authority supporting any such explanation. Lee also has not stated the elements of his proposed new causes of action or provided any authority or analysis demonstrating he has clearly, specifically, and sufficiently alleged each element of his proposed new causes of action. Lee states in his reply brief that he would "[a]dd Yuri if necessary," but he does not propose any specific factual allegations or cite any authority to show how adding Yuri as a plaintiff would cure the defects in his complaint or support the causes of action in his proposed second amended complaint. Thus, Lee failed to satisfy his burden to demonstrate a reasonable possibility he can cure the defects in his complaint.

## DISPOSITION

The judgment is affirmed.  Chase and U.S. Bank are to recover their costs on appeal.

SEGAL, Acting P. J.

We concur:

FEUER,  J.

STONE,  J.